UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION



BRAY & GILLESPIE IX, LLC, a Florida
Limited Liability Company,

        Plaintiff,

vs.

THE HARTFORD FIRE INSURANCE
COMPANY, a Delaware Corporation
        and
WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, a Georgia
Corporation,

        Defendants.
_____/

CASE NO. 6:07-cv-326-ORL-31 KRS

**JURY TRIAL DEMANDED**

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND
DECLARATORY JUDGMENT UNDER INSURANCE POLICIES
AND DEMAND FOR JURY TRIAL**

      Plaintiff, Bray & Gillespie IX, LLC, a Florida Limited Liability Company, by and through its counsel of record, Cobb & Cole, P.A. and Anderson Kill & Olick, P.C., bring this action for damages and declaratory relief against The Hartford Fire Insurance Company, ("Hartford"), a Delaware corporation, and The Westchester Surplus Lines Insurance Company, ("Westchester") a Georgia corporation, as follows:

**I.    INTRODUCTION**

      1.    This claim arises out of the refusal of Hartford and Westchester to fully reimburse B&G for indisputable damage and loss to the Surfside Resort and Suites ("Surfside") as a result of Hurricanes Charley, Frances, and Jeanne, which struck on or about August 13, 2004, September 3, 2004 and September 26, 2004, respectively. In violation of their contractual

obligations, Hartford and Westchester have failed to fully reimburse B&G for any losses B&G has incurred to date from Hurricanes Charley, Frances, and Jeanne, notwithstanding that Hartford and Westchester have never denied coverage for the losses.

## II. JURISDICTION AND PARTIES

2. Plaintiff Bray & Gillespie IX, LLC ("B&G" or "Plaintiff"), is a Florida Limited Liability Company with its principal place of business in Daytona Beach, Volusia County, Florida.

3. Surfside is located at 251 South Atlantic Boulevard, Ormond Beach, Volusia County, Florida.

4. Upon information and belief, Hartford is a Delaware corporation with its principal place of business in Hartford, Connecticut.

5. Upon information and belief, Westchester is a Georgia corporation with its principal place of business in Roswell, Georgia.

6. Jurisdiction over this matter is vested in this Court under 28 USC § 1332 (a)(1) because this matter involves a claim between citizens of diverse states, in an amount in controversy in excess of $75,000, exclusive of interests and costs.

7. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and acts giving rise to these claims occurred within this District.

## III. STATEMENT OF FACTS

### A. The Hartford All-Risk Policy

8. Hartford sold to Hotel Risk Management Association for the policy year February 1, 2004 to February 1, 2005, a Commercial Property Policy, Policy No. GW 0000351 (the "Hartford All-Risk Policy"). A copy of the Hartford All-Risk Policy is attached as **Exhibit A**. and by this reference, incorporated herein as though fully set forth herein.

9. Surfside was a covered property under the Hartford All-Risk Policy.

10. On or around December 1, 2004, pursuant to a Cash Collateral Stipulation made between Surfside Resort & Suites, Inc. and B&G in <u>In re: Surfside Resort and Suites, Inc.</u>, No. 04-9469-3F1, a Chapter 11 case in the United States Bankruptcy Court, Middle District of Florida, Jacksonville Division, all rights to Surfside Resort & Suites, Inc., including rights to insurance coverage proceeds under the Hartford All-Risk Policy, were assigned to B&G.

11. The Hartford All-Risk Policy is an All-Risk property insurance policy that insures against damage and loss caused by covered events such as hurricanes, windstorms and the like.

12. The limit of liability under the Hartford All-Risk Policy is $10 million per occurrence.

13. The insuring agreement in the Hartford All-Risk Policy provides that Hartford will provide coverage for:

> A.  REAL AND/OR PERSONAL PROPERTY
>
> (1) The interest of the Insured in all Real and/or Personal Property (including improvements and betterments) owned, used or intended for use by the Insured, or hereafter acquired.
>
> * * *
>
> B.  BUSINESS INTERRUPTION
>
> Loss resulting from necessary interruptions of business conducted by the Insured and caused by loss, damage or destruction by any of the perils covered herein during the term of this policy to real and personal property.
> . . .
>
> * * *
>
> [16] DEMOLITION AND INCREASED COST OF CONSTRUCTION
>
> In the event of loss or damage under this policy that causes the enforcement of any law or ordinance regulating the construction, repair or use of property, this Company shall be liable for:

  A. the cost of demolishing the undamaged property including the cost of clearing the site;

  B. the proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss;

  C. increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site and limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site. However, this Company shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced;

  D. any increase in the business interruption, extra expense, rental value and royalties loss arising out of the additional time required to comply with said law or ordinance.

\* \* \*

  K. NEWLY ACQUIRED PROPERTY

  This policy is automatically extended to cover additional property as described in this policy which may be purchased, leased or acquired during the policy period, subject to the sublimit. . . .

  The value of such additional property or properties upon which liability is hereby assumed by this Company shall be reported to this Company within sixty (60) days from the date on which the insured acquires an insurable interest in such property or properties. . . .

  **B.** **The Westchester Umbrella Policy**

14. Westchester sold to Hotel Risk Management Association for the policy year February 1, 2004 to February 1, 2005, Excess Property Insurance, Policy No. D358944A 001 (the "Westchester Umbrella Policy"). A copy of the Westchester Umbrella Policy is attached as **Exhibit B** and by this reference, incorporated herein as though fully set forth herein.

15. Surfside was a covered property under the Westchester Umbrella Policy.

16.     On or around December 1, 2004, pursuant to a Cash Collateral Stipulation made between Surfside Resort & Suites, Inc. and B&G in In re: Surfside Resort and Suites, Inc., No. 04-9469-3F1, a Chapter 11 case in the United States Bankruptcy Court, Middle District of Florida, Jacksonville Division, all rights to Surfside Resort & Suites, Inc., including rights to insurance coverage proceeds under the Westchester Umbrella Policy, were assigned to B&G.

17.     The limit of liability under the Westchester Umbrella Policy is $25 million per occurrence.

18.     The Westchester Umbrella Policy is an All-Risk property insurance policy that "insures against 'All Risk' of direct physical loss or damage to the Insured's property subject to the same exclusions, warranties, terms, definitions and conditions . . . as are contained in or as may be added or endorsed to the . . . 'Primary/Underlying Policy.'"

19.     The Westchester Umbrella Policy identifies the Hartford Policy as the "Primary/Underlying Policy," and, as such, incorporates the interests and properties covered as well as the terms and conditions of the Hartford All-Risk Policy.

**B.     Events Leading to B&G's Loss and Its Claims Against Hartford and Westchester**

20.     On or around August 13, 2004, September 3, 2004 and September 26, 2004, Hurricanes Charley, Frances, and Jeanne (the "Hurricanes") struck Florida's east coast and deluged the Central Florida region, including Ormond Beach, Volusia County.

21.     As a direct result of the Hurricanes, Surfside suffered extensive damage to its interior and exterior, including its roof being completely destroyed, the landscaping thoroughly damaged with more than half of the palm trees blown down, the steps to the beach next to the seawall were destroyed, the fencing along the seawall was severely damaged, Surfside's exterior walls were damaged because of debris and water that were moved by the wind, most guest rooms

had extensive water damage, air conditioning units were blown out of the rooms on the first floor, the public areas of the hotel (including the lobby, restaurant, lounge and hallways) had pervasive water damage, and furnishings, fixtures and equipment throughout Surfside sustained extensive water damage.

22. On August 16, 2004, the City of Ormond Beach closed Surfside and posted a sign that read "**DANGER. THIS BUILDING IS DEEMED UNSAFE FOR HUMAN OCCUPANCY ... IT IS UNLAWFUL FOR ANY PERSON TO OCCUPY OR RESIDE IN THIS BUILDING.**"

23. Immediately following the Hurricanes, Surfside Resort & Suites, Inc. noticed Hartford of the losses suffered at Surfside.

24. In the late fall of 2004, Hartford adjusted the loss and provided Surfside Resort & Suites, Inc. an advance of $645,000.

25. On or around December 6, 2004, Wes Sattenfield, President of Surfside Resort & Suites, Inc. sent a letter to Hartford's adjuster noticing him of the assignment of the rights to insurance proceeds from Surfside Resort & Suites, Inc. to B&G.

26. On or around July 18, 2005, B&G provided a formal notice of loss to Westchester for losses suffered at Surfside.

27. Prior to July 18, 2005, B&G had provided informal notices of losses to Westchester, and Westchester was aware of the location of Surfside and the extensive damage to the Central Florida region in which Surfside was located.

C. **Hartford's Wrongful Claims Handling**

28. On December 18, 2006, B&G submitted a Sworn Statement in Proof of Loss to Hartford for damages suffered as a result of the Hurricanes for the full amount of the loss as of December 18, 2006 - $33,266,726 (the "Hartford Proof of Loss").

29. On January 18, 2007, Hartford rejected the Hartford Proof of Loss. (See January 18, 2007, letter from Hartford attached hereto as **Exhibit C**).

30. To date, Hartford has not reimbursed B&G for any of the losses caused by the Hurricanes nor has it advanced any monies for these losses.

31. Plaintiff has complied with all of the conditions precedent under the terms of the Hartford All-Risk Policy as a predicate to bringing this action.

32. Since coverage exists under the terms of the Hartford All-Risk Policy for all property damage occurring at Surfside and since the damage at Surfside greatly exceeds the per occurrence policy limit of $10 million, B&G is entitled to, at a minimum, coverage by Hartford for at least a single occurrence limit of $10 million.

D. **Westchester's Wrongful Claims Handling**

33. On December 18, 2006, B&G submitted a Sworn Statement in Proof of Loss to Westchester for damages suffered as a result of the Hurricanes for the full amount of the loss as of December 18, 2006 - $33,266,726 (the "Westchester Proof of Loss").

34. On January 25, 2007, Westchester rejected the Westchester Proof of Loss and advised that it was Westchester's opinion that the Hurricanes constitute three separate occurrences. (See January 25, 2007, letter from Westchester attached hereto as **Exhibit D**).

35. To date, Westchester has not reimbursed B&G for any of the losses caused by the Hurricanes nor has it advanced any monies for these losses.

36. On November 3, 2005, Westchester filed a complaint in bankruptcy court against B&G., in which Westchester alleged that B&G, as the largest creditor to the prior owners of Surfside, manipulated the bankruptcy proceeding for the fraudulent purpose of manufacturing a

claim under the Westchester Umbrella Policy by arranging for the former owners to fail to give proper notice to Westchester of the bankruptcy proceedings.

37. On June 8, 2006, the Bankruptcy Court for the Middle District of Florida issued an Order holding that Westchester was not entitled to notice because its obligation to pay was not affected by the outcome of the bankruptcy proceeding, denying Westchester's argument regarding fraud, and holding that the assignment to B&G of the rights for insurance coverage under the Westchester Umbrella Policy for damage suffered by Surfside was proper and valid.

38. Due to the lawsuit brought by Westchester and the bankruptcy proceeding for Surfside Resort & Suites, Inc., B&G's ability to properly support these claims was delayed.

39. Plaintiff has complied with all of the conditions precedent under the terms of the Westchester Umbrella Policy as a predicate to bringing this action.

40. Since coverage exists under the terms of the Westchester Umbrella Policy for all property damage occurring at Surfside and since the damage at Surfside exceeds $30 million, which is the maximum Hartford would be obligated to pay if three occurrences had occurred because of the $10 million per occurrence policy limit contained in the Harford Policy, at a minimum B&G is entitled to coverage from Westchester for $3,266,726.

## COUNT I
## BREACH OF CONTRACT

41. Plaintiff incorporates by reference paragraphs 1 through 40, as though fully set forth herein.

42. The Hartford Policy constitutes a valid and enforceable contract between the parties.

43. Under the terms of the Hartford Policy, there are no exclusions or limitations that would preclude coverage of B&G's claim for this loss.

44. Hartford's conduct, in refusing to pay any of Plaintiff's losses caused by the Hurricanes, constitutes a breach of contract for which no justification exists.

45. As a direct and proximate result of Hartford's breach of its contract of insurance with Plaintiff, Plaintiff has sustained considerable damage including, but not limited to, lost business opportunities, the loss of the time value of money, other consequential damages, attorney's fees and expert fees, all of which are compensable.

46. B&G is entitled to recover its reasonable attorneys' fees pursuant to Fla. Stat. §627.428.

47. B&G has retained the undersigned attorneys and is obligated to pay them a reasonable fee.

## COUNT II
## BREACH OF CONTRACT

48. Plaintiff incorporates by reference paragraphs 1 through 40, as though fully set forth herein.

49. The Westchester Policy constitutes a valid and enforceable contract between the parties.

50. Under the terms of the Westchester Policy, there are no exclusions or limitations that would preclude coverage of B&G's claim for this loss.

51. Westchester's conduct, in refusing to pay any of Plaintiff's losses caused by the Hurricanes, constitutes a breach of contract for which no justification exists.

52. As a direct and proximate result of Westchester's breach of its contract of insurance with Plaintiff, Plaintiff has sustained considerable damage including, but not limited to, lost business opportunities, the loss of the time value of money, other consequential damages, attorney's fees and expert fees, all of which are compensable.

53.   B&G is entitled to recover its reasonable attorneys' fees pursuant to Fla. Stat. § 627.428.

54.   B&G has retained the undersigned attorneys and is obligated to pay them a reasonable fee.

## COUNT III
## REQUEST FOR DECLARATORY RELIEF AND JUDGMENT

55.   Plaintiff incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

56.   A real and justifiable controversy exists over the extent of coverage provided by the Hartford and Westchester Policies for the damages B&G suffered to Surfside from the Hurricanes.

57.   The damages suffered by B&G are in excess of $33 million.  As such, if the damage suffered by Surfside resulted from a single occurrence, Hartford would be liable for the first $10 million and Westchester would be liable for the balance of B&G's damages.  If, however, the damages suffered by Surfside resulted from multiple occurrences, Hartford would be liable for up to $10 million for each occurrence and Westchester would only be liable for the amount that each single occurrence caused damage in excess of $10 million.  Since Hartford and Westchester disagree as to the number of occurrences, Plaintiff seeks, and is entitled to, a judicial declaration as to the number of occurrence and the resulting liability owed by Hartford and Westchester.

WHEREFORE, having set forth its causes of action above, Plaintiff respectfully requests that this Court enter judgment against Hartford and Westchester as follows:

A. For the amount payable under the Hartford and Westchester Policies for damage B&G suffered to Surfside caused by the Hurricanes, which is in excess of $33 million;

B. Declaratory judgment that coverage exists for B&G under the terms of the Hartford's and Westchester's Policies and apportionment between Hartford and Westchester of the losses B&G suffered at Surfside;

C. For all other damages B&G suffered proximately resulting from Hartford's and Westchester's wrongful conduct related to B&G's claim under the Hartford and Westchester Policies for damages from the Hurricanes;

D. For its costs, attorneys' fees, and other expenditures incurred in this matter; and

E. For such other and further relief as the Court may deem equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all issues and claims so triable.

Cobb & Cole

March 9, 2007

*Kathryn D. Weston*
Kathryn D. Weston
Florida Bar No. 0897701
150 Magnolia Avenue
Daytona Beach, Florida 32114
Phone: 386.255.8171
Facsimile: 386.254.6361
*Co-Counsel for Plaintiff, Bray & Gillespie IX, LLC*


John N. Ellison, Esquire
**(application for special admission to be filed)**
Michael J. Lane, Esquire
**(application for special admission to be filed)**
William H. Pillsbury, Esquire
**(application for special admission to be filed)**

ANDERSON KILL & OLICK, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Phone: 267-216-2700
Fax: 215-568-4573
*Co-Counsel for Plaintiff Bray & Gillespie IX, LLC*