**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**BRAY & GILLESPIE IX, LLC,**

            **Plaintiff,**

**-vs-**                                           **Case No. 6:07-cv-326-Orl-DAB**

**HARTFORD FIRE INSURANCE
COMPANY and WESTCHESTER
SURPLUS LINES INSURANCE
COMPANY,**

            **Defendants.**

_____

## ORDER

This cause came on for consideration without oral argument on the following motions filed herein:

> **MOTION:** **DAUBERT MOTION TO EXCLUDE EXPERT TESTIMONY OF DONALD MALECKI (Doc. No. 196)**
>
> **FILED:** January 21, 2009
> _____
>
> **THEREON** it is **ORDERED** that the motion is **DENIED** as moot. *See* Doc. No. 207.

> **MOTION:** **DAUBERT MOTION TO EXCLUDE TESTIMONY OF STAN JOHNSON (Doc. No. 197)**
>
> **FILED:** January 21, 2009
> _____
>
> **THEREON** it is **ORDERED** that the motion is **DENIED**.

| | |
|---|---|
| **MOTION:** | **DAUBERT MOTION TO EXCLUDE TESTIMONY OF STANLEY PAUL HOELLE (Doc. No. 198)** |
| **FILED:** | January 21, 2009 |

**THEREON** it is **ORDERED** that the motion is **DENIED**.

| | |
|---|---|
| **MOTION:** | **DAUBERT MOTION TO EXCLUDE TESTIMONY OF BRIAN POHL (Doc. No. 199)** |
| **FILED:** | January 21, 2009 |

**THEREON** it is **ORDERED** that the motion is **DENIED**.

| | |
|---|---|
| **MOTION:** | **MOTION FOR LEAVE TO FILE REPLY BRIEFS (Doc. No. 211)** |
| **FILED:** | February 13, 2009 |

**THEREON** it is **ORDERED** that the motion is **DENIED**.

This is a dispute over insurance coverage regarding damages resulting from three hurricanes that struck Central Florida in 2004. Plaintiff has identified several experts it intends to offer as witnesses and Defendants seek to exclude their testimony, citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed. 2d 469 (1993). The Court finds that the objections raised by Defendants are not sufficient to exclude the proffered testimony under *Daubert* and the Federal Rules of Evidence.

### *STANDARDS OF LAW*

Federal Evidence Rule 702 governs the admission of expert testimony in federal court, and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert

by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

As the Eleventh Circuit recently noted:

> In addressing the reliability of expert methodology, "[d]istrict courts 'have substantial discretion in deciding how to test an expert's reliability.' " *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir.2005) (quoting *United States v. Majors*, 196 F.3d 1206, 1215 (11th Cir.1999)). In *Daubert*, the Supreme Court set out four non-exclusive criteria for reliability determinations: "(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 595). These factors may guide a district court's reliability inquiry, but the district court ultimately has "broad latitude" as to how it determines reliability. *Kumho Tire*, 526 U.S. at 152.[1]

*Wilson v. Taser Intern., Inc,*. 2008 WL 5215991, *4 (11th Cir. 2008) (unpublished).

"Whatever factors are considered, the Court's focus should "be solely on principles and methodology, not the conclusions they generate." *Allison v. McGhan Medical Corp*., 184 F.3d 1300, 1312 (11th Cir. 1999) (internal quotes omitted). As Judge Fawsett has stated:

> It is therefore error to conflate admissibility with credibility, as by considering the relative weight of competing experts and their opinions. *Quiet Technology,* 326 F.3d at 1341[2]. . . . With respect to the third reliability criterion of Rule 702, errors in an expert's application of a reliable method generally implicate credibility rather than reliability. *See Quiet Technology*, 326 F.3d at 1345-46 (using incorrect numbers in a reliable formula is not grounds for exclusion under *Daubert).*

*Furmanite America, Inc. v. T.D. Williamson, Inc*., 506 F.Supp.2d 1126, 1130 (M.D. Fla. 2007).

To fulfill its obligation under *Daubert*, this Court must "engage in a rigorous inquiry to determine whether: '(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable

---

[1] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

[2] *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.,* 326 F.3d 1333 (11th Cir. 2003).

-3-

as determined by the sort of inquiry mandated in *Daubert* ; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.' " *Finestone v. Florida Power and Light Co.* , 272 Fed.Appx. 761, 767 (11th Cir. 2008) (internal citation omitted). "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." *Daubert* at 1292.

## *DISCUSSION*

**Stan Johnson** (Doc. No. 197)

Plaintiff seeks to offer the opinion testimony of Stan Johnson, a Certified Public Accountant, with respect to Plaintiff's business interruption insurance loss.

*Qualifications and Helpfulness*

As set forth in the Response (Doc. No. 208), Mr. Johnson is a CPA and Managing Director of Insurance and Claims at Navigant Consulting. He has an appropriate education and has published and testified as an accounting expert on business interruption losses. Defendants do not appear to challenge his qualifications, and the Court finds that Mr. Johnson appears to have adequate and appropriate credentials to opine on business interruption loss evaluations, an area that the Court believes involves specialized expertise. The Court concludes that Mr. Johnson is competent to testify and his testimony is likely to assist the jury.

*Reliability*

Defendant contests the proffered testimony's reliability because Johnson "failed to verify the contents of the profit and loss statements upon which he based his entire business interruption calculation, overstated the occupancy rate used as the basis for the projected loss, and failed to inquire about the nature of the expenses shown in the profit and loss statements." The Court has carefully read Defendants' argument and concludes that even if Defendants are correct about Johnson's actions

(a conclusion that is disputed by Plaintiff) these are issues that go not to the admissibility of the opinion, but instead are fodder for cross examination and rebuttal.

Defendants do not challenge the methodology of the calculations (*e.g.,* that such items as the occupancy rate, the profit and loss statements or expenses are not relevant to the analysis); rather, Defendants take issue with whether Johnson used correct numbers. In other words, Defendants assert that Johnson failed to perform the correct method correctly. This is not grounds for excluding the testimony under *Daubert*. *See Quiet Technology*, 326 F.3d at 1345-46 (using incorrect numbers in a reliable formula is not grounds for exclusion). The particular issue of limiting the damage calculation with respect to a period of restoration is a matter of factual and legal dispute in this case. Doubtless, it will be the subject of various proofs and arguments at trial. The finder of fact, properly instructed, can consider Mr. Johnson's opinions in light of whatever facts are found in that regard. The motion is denied.

**Stanley Paul Hoelle** (Doc. No. 198)

Plaintiff wishes to offer the testimony of Mr. Hoelle, a local architect who will testify that in his opinion the building cannot be repaired and instead must be torn down and rebuilt consistent with the Ormond Beach Land Development Code and Florida Building Code. Hoelle offers opinions as to the damage the structure incurred and the costs of rebuilding.

*Qualifications and Helpfulness*

Hoelle's resume indicates that he is an architect and a general contractor, with extensive local experience in hotel design and construction (Doc. No. 198-2). Defendants do not appear to challenge Hoelle's qualifications or the general proposition that the testimony of an architect experienced in hotel design and construction would be useful to the jury in an insurance coverage dispute case. For present purposes, therefore, the Court finds Hoelle to be qualified to opine on the damages to the hotel

and the costs and design for a rebuilt hotel, and that his testimony will likely be helpful to the jury.

*Reliability*

Plaintiff retained Hoelle "to perform a code analysis" of the building and property at issue, and his opinions are based on his visual inspection of the site and his extensive experience in the City of Ormond Beach, with respect to the building codes (Doc. No. 210). Based on his visual inspections, with no measurement or other testing, Hoelle concluded that, under his interpretation of the codes, the property would have to be rebuilt and provided cost estimates for same. The parties offer dueling interpretations of what the codes say and what they mean, but appear to agree that at least one issue is whether 50% of the square footage of the building was "destroyed" so as to warrant a rebuild that must be in compliance with the building code.[3] Hoelle purports to opine on same. Defendants attack the proposed testimony as unreliable in that it misapplies the pertinent development codes, and interpretation of a building code is a question of law for the Court, in any event.

Interpreting code requirements and estimating building damage and repair or rebuild costs is exactly the sort of thing architects do, well within an architect's expertise for *Daubert* purposes. To the extent Defendants disagree with his analysis or find it factually unsupportable, they can challenge these conclusions by cross examination or offer the testimony of their own expert witness, and the jury can decide the matter by weighing the testimony of the competing experts. "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Allison*, 184 F3d at 1311 (*quoting Daubert,* 509 U.S. at 596, 113 S.Ct. 2786). The motion is denied.

---

[3]The Ormond Beach Land Development Code asserts that if 50% of the square footage of a nonconforming structure is destroyed, than it shall not be reconstructed except in conformity with the code.

**Brian C. Pohl** (Doc. No. 199)

Mr. Pohl is offered as an expert in analyzing the extent of hurricane damage to the building, specifically "regarding the structural integrity of the building, the percent of the building that is damages, and the costs to repair the building." (Doc. No. 199). Defendants contest Pohl's qualifications, the reliability of his methodology, and the helpfulness of his testimony to the jury, based primarily on the fact that the majority of the underlying testing and analysis in his report was done by others at his firm.

*Qualifications*

Pohl is a licensed Professional Engineer, and manager of a local office of a large registered professional engineering firm (Doc. No. 199-2). According to his resume (Doc. No. 199-2 at 117-118), he has a degree in civil engineering and varied experience "coordinating and directing geotechnical explorations for buildings," in foundation analysis, and plan review and inspections of commercial and residential buildings. His resume and deposition indicate that he has experience with respect to high rise structures in the local area. As such, Pohl is "a witness qualified as an expert by knowledge, skill, experience, training, or education" (Federal Rule of Evidence 702).

Defendants seek to challenge Pohl's qualifications to opine with respect to damage allegedly caused by mold or asbestos, contending that, by his own admission, he is not a certified asbestos consultant, nor is he trained or certified in mold remediation or removal. It is undisputed that a certified asbestos inspector and a licensed asbestos consultant with Pohl's firm prepared a report with respect to asbestos, and a Limited Indoor Air Quality Assessment which addressed the issue of mold was completed by an Environmental Project Manager at Pohl's firm (Doc. No. 199-3). Thus, the issue, as framed by Defendants, is whether Pohl is qualified to opine as to a *different* experts' conclusions.

Plaintiff contends that Pohl is an engineering expert, and, as such, can testify as to related applications, and any objection to same goes to the weight and not admissibility of the testimony. Were this the only argument, the Court would be unconvinced. In its Response brief, however, Plaintiff makes clear that "Mr. Pohl will not be testifying about the actual content of the mold and asbestos reports, but rather that asbestos and mold were found in the building and would have to be removed before any repairs could be undertaken." (Doc. No. 209 at 14). As limited, the Court finds that a professional engineer is qualified to testify as to this generally accepted proposition.

*Helpfulness*

Defendants contend that Pohl is "completely unable to explain the investigatory methods, any analytical process employed, or the significance of the purported conclusions contained in his report[s]" (Doc. No 199 at 7), and thus, the testimony will not be helpful. The Court finds this to be no more than a restatement of Defendants' argument that Pohl is unqualified and his testimony is not reliable, because someone else performed the underlying tests and analysis. Certainly, assuming that the witness was qualified and the methodology reliable, engineering testimony regarding damages incurred and estimated repair or replacement costs is relevant and would enlighten the jury. Such testimony would be helpful.

*Reliability*

When all of the adjectives are removed from the motion, Defendants' argument is that *this* witness did not perform the underlying tests and the conclusions reached are based on incorrect assumptions about the building. Neither is a proper *Daubert* challenge. There is no requirement that an expert has to have first hand information as to all relevant facts and verify same; nor is there a requirement that the expert must perform all testing personally. Just as a physician may reliably interpret an X-ray taken by a technician, a Professional Engineer is qualified, by training and experience, to review the work of others and opine to matters *within his expertise.* To the extent

Defendants find fault with the assumptions underlying the opinions, that is not an attack on the methodology, but on the application of an established methodology to a disputed set of facts. As above, such is fodder for cross-examination or rebuttal, but is not an admissibility issue. The motion is denied.

**DONE** and **ORDERED** in Orlando, Florida on April 20, 2009.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record