**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**BRAY & GILLESPIE IX, LLC,**

      **Plaintiff,**

**-vs-**                    **Case No. 6:07-cv-326-Orl-DAB**

**HARTFORD FIRE INSURANCE
COMPANY and WESTCHESTER
SURPLUS LINES INSURANCE
COMPANY,**

      **Defendants.**
_____

## ORDER

This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION IN LIMINE TO EXCLUDE EXTRINSIC EVIDENCE REGARDING MEANING OF "OCCURRENCE" (Doc. No. 235)** |
| **FILED:** | June 5, 2009 |
| **THEREON** it is **ORDERED** that the motion is **DENIED,** as unnecessary. | |
| **MOTION:** | **MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM ARGUING HURRICANES CHARLEY, FRANCE AND JEANNE AS A SINGLE OCCURRENCE (Doc. No. 244)** |
| **FILED:** | June 5, 2009 |
| **THEREON** it is **ORDERED** that the motion is **GRANTED**. | |

The two motions effectively seek the same relief: the exclusion of any argument or evidence that the three hurricanes were not separate occurrences within the meaning of the Policies. While the

Court, in denying summary judgment, specifically found that this issue was one of disputed fact (Doc. No. 228), the parties have subsequently stipulated to the following in the Joint Final Pretrial Statement:

> bb. The Surfside property was struck by three separate and identifiable hurricanes in the year 2004 (Hurricanes Charley, Frances and Jeanne).
> cc. Each hurricane (Charley, Frances and Jeanne) caused some separate and distinct damage to the subject property.

(Doc. No. 232 at 21).

As the parties have now stipulated that the property was struck by three separate and identifiable storms which *each* caused *separate and distinct* damage, the Court finds there is no longer an issue of fact to be litigated on this point. The property was damaged by three occurrences, as a matter of law. This conclusion, it should be noted, does not resolve questions arising from the cumulative effects of the storms, including how the resulting losses and damages should be (or have been) analyzed and adjusted.

Under Florida law, which applies here, an insurance policy is a contract, and ordinary contract principles govern the interpretation and construction of such a policy. *Fabricant v. Kemper Independence Ins. Co.*, 474 F.Supp.2d 1328, 1330 (S.D. Fla. 2007). As with all contracts, the interpretation of an insurance contract is a question of law to be determined by the court. *Id.*, *citing Graber v. Clarendon Nat'l Ins. Co.*, 819 So.2d 840, 842 (Fla. 4th DCA 2002). Where the language of a policy is plain and unambiguous, the insurance contract must be enforced as written. In interpreting that contract "the language of the policy is the most important factor." *Taurus Holdings, Inc. v. United States Fid. and Guar. Co.*, 913 So.2d 528, 537 (Fla. 2005). Under Florida law, "insurance contracts are construed according to their plain meaning." *Taurus*, 913 So.2d at 532. Moreover, "when a policy provision remains undefined, common everyday usage determines its meaning." *Fabricant, supra,* 474 F. Supp. 2d at 1331 (collecting cases).

Applied here, the Policies do not define the term "occurrence," so the Court interprets the word as being consistent with its plain everyday meaning: an independent event that happened. More specifically, Florida courts have defined the word "occurrence" in liability insurance policies consistent with the "cause theory." *See Koikos v. Travelers Ins. Co.*, 849 So. 2d 263 (Fla. 2003). Under that theory, when presented with the question of whether damages were the result of one or more occurrences, courts are to ask "whether there was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damages." *American Indem. Co. V. McQuaig,* 435 So. 2d 414-15 (Fla. 5th DCA 1983). Here, the parties have stipulated that three separate hurricanes struck the property at different points in time and caused separate and distinct damages– thus, the Court finds as a matter of law that each was a separate "occurrence."

The Court is unpersuaded by Plaintiff's contention that, despite the stipulation, the three storms can be interpreted as only one occurrence: 1) under other Policy language; 2) because of the "manifestation" theory; or 3) because the damages from the first storm were so severe that additional damage from the following storms was unavoidable.

Section 4A of the Property Form of the Hartford primary Policy states, in pertinent part: "All losses, damages, or expenses arising out of any one occurrence shall be adjusted as one loss…". This adds nothing to the analysis as it presumes, by its terms, only "one occurrence." Moreover, the plain language of this provision simply allows for different kinds of expenses that result from the *same* loss to be adjusted as one loss. Here, of course, the question is whether the three separate events are the same loss.

As for the manifestation theory, that theory holds that "the trigger for coverage under a liability policy is when the injury manifests." *Auto Owners Ins. Co. v. Travelers Cas. & Surety Co.,* 227 F.Supp.2d 1248, 1266 (M.D. Fla. 2002). There is no issue here as to when coverage manifested.

-3-

Plaintiff has stipulated that each storm resulted in "distinct" damage. Thus, the manifestation theory as applied here merely means that there were three storms, with separate coverage triggered each time the "distinct" damage from each separate storm was inflicted.

Further, the Court finds no support for the contention that the damages suffered by Hurricanes Francis and Jeanne "arose out of" Hurricane Charley. The *events* were separate, as stipulated by the parties. There is nothing to indicate that Hurricane Charley "caused" Hurricane Francis or Jeanne, and the fact that Charley left the property open to *additional* damage by subsequent storms does not change the fact that the damage was, indeed, in addition to that caused by Charley and was caused by different storms that occurred weeks apart. Plaintiff fails to establish that three separate hurricanes were "interrelated," even if the property damage was compounded. As noted above, issues as to the proper calculation of losses and adjustment of the claims arising from the three storms remain open.

| **MOTION:** | **MOTION TO PRECLUDE EVIDENCE REGARDING STRENGTH AND COSTLINESS OF 2004 HURRICANES (Doc. No. 236)** |
|---|---|
| **FILED:** | **June 5, 2009** |
| **THEREON** it is **ORDERED** that the motion is **DENIED** without prejudice, as set forth herein. ||
| **MOTION:** | **MOTION TO EXCLUDE EVIDENCE OF OTHER LITIGATION (Doc. No. 243)** |
| **FILED:** | **June 5, 2009** |
| **THEREON** it is **ORDERED** that the motion is **DENIED** without prejudice, as set forth herein. ||

The evidence sought to be excluded[1] may or may not be relevant, depending upon the *specific* evidence offered, the context it is offered in, and the purpose it is offered for. For example, the

---

[1] As limited by the parties in subsequent filing (Doc. No. 261).

strength of each hurricane is relevant in that Plaintiff asserts that they caused significant damage. That said, the fact that the hurricanes damaged other areas of the state does not appear to be relevant to the question of how strong the hurricane was when it impacted this Property and what its effect on the Property was.

Similarly, the detailed particulars of the bankruptcy litigation between the parties is not directly relevant to this claim, but the very fact that the parties were in related litigation could bear on contested issues of notice and co-operation. As such, an order excluding all evidence on these matters for all purposes would be inappropriate.

The motions are therefore denied, without prejudice to the parties' right to raise appropriate objections to specific evidence or arguments at trial.[2] The Court advises counsel that, in its experience, juries rarely appreciate interruptions arising from frequent objections and therefore, counsel are urged to confer and use their best efforts to reach objective stipulations on these subjects, the underlying facts of which do not appear to be in genuine dispute. Such stipulations would allow the jury to understand the background circumstances without the undue delay that would be engendered by testimony regarding the details of Bankruptcy Court motion practice or the effects of hurricanes across Florida.

| | |
|---|---|
| **MOTION:** | **MOTION TO EXCLUDE EXPERT OPINION TESTIMONY FROM KMI, SCHIRMER, PAVARINI AND PERINI (Doc. No. 237)** |
| **FILED:** | **June 5, 2009** |

**THEREON** it is **ORDERED** that the motion is **GRANTED** in part.

---

[2]The Court will not, in any event, allow the trial to be diverted into mini-trials of collateral events.

As set forth in Plaintiff's response to this motion (Doc. No. 269), Plaintiff intends to introduce into evidence testimony concerning a report prepared by KMI containing an estimate of the cost to repair the Surfside property which was made a part of Plaintiff's Interim Proofs of Loss. The KMI Report also contains a Code Assessment Report prepared by Richard Galvez and Thomas Gardiner of Schirmer, and a Cost Analysis report prepared by Perini which was relied upon by KMI in arriving at its estimate of repair costs. Plaintiff advises that the principal authors of the KMI Report and Schirmer's Code Assessment, Richard Kraus and Richard Galvez, were deposed by Defendants concerning their reports, and Plaintiff intends to offer the live testimony of Mr. Kraus and the deposition testimony of Mr. Galvez at trial. Defendants seek to exclude this proffered testimony, including the reports, as expert opinion testimony under Federal Rules of Evidence 702 and 703 that does not comport with the disclosure and written report requirements of Rule 26, Federal Rules of Civil Procedure.

The witnesses are not mere lay persons, as Plaintiff contends, and their opinions are not lay opinions. These reports are based necessarily on not only their personal observations of the Property (such observations are admissible not as opinion, but as evidence of facts), but also on their "specialized knowledge" of construction and estimating costs. As such, these opinions cannot be offered under Fed. R. Evid. 701.[3]

Plaintiff contends that this type of testimony is allowed, citing the unpublished case of *Preis v. Lexington Insurance Co.,* 2008 WL 2247140 (11th Cir. 2008). There, the Eleventh Circuit affirmed the decision of an Alabama District Court in a suit filed by an insured seeking damages under his

---

[3]If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.
Fed. R. Evid. 701.

insurance policy for losses incurred following Hurricane Katrina. The pertinent portion of that opinion reads, in its entirety, as follows:

> Preis also argues that the lay testimony of insurance adjusters James Gibson and Tracy Clark should not have been admitted into evidence under Federal Rule of Evidence 701 because they did not have personal knowledge of the facts and because their testimony was based on "scientific, technical, or other specialized knowledge within the scope of Rule 702," which governs expert testimony. The testimony offered by both Clark and Gibson specifically related to the damage to the home they observed during the inspections they personally conducted, the reports they each individually prepared regarding their assessments of the damage to the Preis' home, and the procedures they employed to reach their loss estimates. Given the nature of their testimony, the district court did not abuse its discretion in allowing the adjusters to testify as lay witnesses.

*Preis*, 2008 WL 2247140, at 2. In a footnote, the Court also noted that the testimony was invited error in that it was solicited at trial by Preis. *Id.* The Court does not find this unpublished opinion to be controlling here.

*Preis* involved insurance adjustors who personally inspected the property and provided "their assessments of the damage to the home." Here, the reports are not offered by insurance adjustors to provide an assessment of existing damage, but rather, by construction professionals to provide an opinion *as to the impact of building codes and an estimated cost to repair* the property. The analogy to the insurance adjustors in *Preis* is not apt.[4]

There is a marked difference between traditional lay opinion testimony, which relates to personally observed existing matters (*e.g.,* "he looked drunk," "it was about a mile away," "it was more than 20 pounds") and the type of testimony offered here – a true opinion regarding a matter that has yet to occur, based on the specialized knowledge of "profession[als] in the construction business,

---

[4]Moreover, the ruling by the Eleventh Circuit was only that the lower court did not abuse its discretion in allowing the witnesses to testify. This is not a mandate that all lower courts *must* allow such testimony. Further, the appellate court noted that the error was invited in that it was solicited by Preis. No such invitation is present on this record.

-7-

who make these kinds of assessments on a daily business [sic] as part of their profession." (Doc. No. 269 at 8-9).

Nor is the Court persuaded by Plaintiff's contention that the broad evidence rule applies and that courts routinely allow owners to testify as to value. The proffered witnesses are not the owners of the property and the broad evidence rule goes to the question of relevancy, not admissibility. Nothing in the broad evidence rule overrides the requirement that any evidence sought to be offered to establish value must first meet the basic test of admissibility.

The reports themselves are inadmissable to the extent they contain opinions. The witnesses can testify to relevant matters, as fact witnesses, as to what they observed on their inspections. Any opinions as to the cost to repair are within the purview of expert testimony, and Plaintiff's failure to designate and tender the witnesses as experts forecloses their use as such at trial.

| | |
|---|---|
| **MOTION:** | **MOTION TO EXCLUDE EVIDENCE OF MARKET OR ASSESSED VALUE (Doc. No. 238)[5]** |
| **FILED:** | **June 5, 2009** |
| **THEREON** it is **ORDERED** that the motion is **DENIED.** ||
| **MOTION:** | **MOTION TO EXCLUDE EVIDENCE OF FLORIDA BUILDING CODE PROVISIONS (Doc. No. 245)** |
| **FILED:** | **June 5, 2009** |
| **THEREON** it is **ORDERED** that the motion is **DENIED** without prejudice. ||

---

[5]As narrowed by agreement of the parties (Doc. No. 261).

> **MOTION:** MOTION TO EXCLUDE POST LOSS CHANGES IN BUILDING CODE (Doc. No. 250)
>
> **FILED:** June 5, 2009
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED**.

The parties differ as to which version of the Florida Building Code "applies" here, and each side seeks to exclude any other version. Plaintiff contends that the version of the code in effect at the time of the loss is the only relevant code, as the Hartford Policy provides for computation of the loss at the time of loss. Defendants contend that such applies only if the property was repaired or rebuilt, and Plaintiff's failure to do either limits liability to actual cash value of the property destroyed.

The Policy provides:

> 11. VALUATION
>
> At the time of loss, the basis of adjustment shall be as follows:
> …
> G. Other property not otherwise provided for: At replacement cost new; if the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than actual cash value (with proper deduction for depreciation) of the property destroyed.
> All to be computed at the place of loss.
> (Hartford Policy, Section 12(G)) [6]

Defendants assert that the code has subsequently been amended and, as Plaintiff never sought a building permit under the old code and the permitting authorities require compliance with the code that exists at the time of the permit application, the old code is "irrelevant."

Damages recoverable by Plaintiff under the policies in this case (if any), must be measured from the time of loss, allowing a reasonable period for analysis and adjustment. Possible future plans or changes in code provisions, or increases in construction costs do not enter into the computation.

---

[6]Westchester's Policy follows form.

The extensive delays from the storms until now (or some future redevelopment date) have no bearing on what loss was suffered. What some particular, hypothetical repair or replacement plan might have cost (or might yet cost) at some period indefinitely after the covered occurrence does not address what the covered loss was.

If Plaintiff is entitled to a recovery in this case, it will be based on either repair costs or, on the other hand, replacement value, depending on whether the jury finds the building required demolition. In either event, the amount must be based on circumstances as they existed in the proximate aftermath of the storms. Consequently, the terms of any *subsequent* code are not relevant.

Plaintiff's motion is **granted** to the extent it seeks to exclude any reference to the terms of the current codes as being applicable to the measure of damages.

> **MOTION:** **MOTION TO PRECLUDE EVIDENCE REGARDING LACK OF CRIMINAL PROSECUTION (Doc. No. 239)**
>
> **FILED:** **June 5, 2009**
> _____
>
> **THEREON** it is **ORDERED** that the motion is **DENIED** as moot.

The parties have resolved this motion by stipulation (Doc. No. 261).

> **MOTION:** **MOTION TO PRECLUDE EVIDENCE OF ALLEGED HURRICANE DAMAGE TO OTHER PROPERTIES (Doc. No. 241)**
>
> **FILED:** **June 5, 2009**
> _____
>
> **THEREON** it is **ORDERED** that the motion is **DENIED** without prejudice.

The evidence sought to be excluded may or may not be relevant, depending on the context in which it is offered and the positions the parties take at trial.[7] The Court declines to issue a blanket

---

[7] For example, to the extent Defendants challenge the strength or impact of the hurricanes on the property, this may open the door to some evidence of damage to surrounding properties.

prohibition against all such evidence, but a show of relevancy will be required prior to the introduction of evidence of other damage. The Court again observes, however, it is inappropriate to spend trial time on evidence as to matters not pertinent to the property at issue. The force and effect of destructive storms is highly localized. Plaintiff faces a substantial burden in establishing that any such evidence will be useful to the jury in resolving the issues of this case.

> **MOTION:** **MOTION TO EXCLUDE CLAIMS HANDLING PRACTICES (Doc. No. 242)**
>
> **FILED:** **June 5, 2009**
> _____
>
> **THEREON** it is **ORDERED** that the motion is **DENIED** as moot.

The parties have resolved this issue by stipulation (Doc. No. 264).

> **MOTION:** **MOTION TO PRECLUDE EVIDENCE REGARDING PERIOD OF RECOVERY (Doc. No. 246)**
>
> **FILED:** **June 5, 2009**
> _____
>
> **THEREON** it is **ORDERED** that the motion is **DENIED** as moot.

The parties have resolved this issue by stipulation (Doc. No. 261).

> **MOTION:** **MOTION TO EXCLUDE EVIDENCE OF THE COASTAL CONSTRUCTION CONTROL LINE PROVISIONS (Doc. No. 247)**
>
> **FILED:** **June 5, 2009**
> _____
>
> **THEREON** it is **ORDERED** that the motion is **DENIED**, without prejudice.

While the Court finds no basis to exclude all mention of a provision of law which appears to have been raised in deposition by the parties, it cautions the parties that the measure of damages, as stated above, is adjusted at the time of the loss. Thus, just as subsequent versions of the building code

-11-

have no application here, the evidence with respect to these provisions will be limited to the applicability (if any) of the control provisions that existed at the time of the loss.

> **MOTION: MOTION FOR RELIEF FROM DEEMED ADMISSIONS (Doc. No. 248)**
>
> **FILED: June 5, 2009**
>
> ___
>
> **THEREON** it is **ORDERED** that the motion is **DENIED** as moot. *See* Doc. No. 263.
>
> **MOTION: MOTION WITH RESPECT TO ATTORNEY-CLIENT PRIVILEGE MATERIAL (Doc. No. 249)**
>
> **FILED: June 5, 2009**
>
> ___
>
> **THEREON** it is **ORDERED** that the motion is **DENIED** as moot. The motion has been withdrawn (Doc. No. 261).
>
> **MOTION: MOTION TO EXCLUDE EVIDENCE OF LONG-RANGE DEVELOPMENT PLAN (Doc. No. 251)**
>
> **FILED: June 5, 2009**
>
> ___
>
> **THEREON** it is **ORDERED** that the motion is **DENIED** without prejudice.

At issue is the relevance of a plan allegedly formulated by Plaintiff following the damage to the Property which, according to Defendants, revealed Plaintiff's plan to redevelop the property into a high rise building, now prohibited by city regulations. Plaintiff argues that the plan (which it deems a mere proposal) is not relevant to its claim and is highly prejudicial. According to Defendants, the redevelopment plan supports Hartford and Westchester's contention that "Plaintiff always intended to redevelop the Surfside property, which is why it never made any effort to repair the structure, and why it asserted and continues to assert that the building cannot be repaired and must be demolished."

Defendants also assert that the plan is relevant to the disputed issue of the real reason for the delay in tendering the proof of loss; that is, that Plaintiff never intended to repair the property, but wanted it demolished so it could proceed with its redevelopment plan.

There is no question that the plan is irrelevant to Plaintiff's case in chief, but evidence that Plaintiff was preoccupied pursuing matters that could be construed as inconsistent with proper cooperation in the adjustment process may be relevant to the extent it is offered in the context of Defendant's affirmative defenses of failure to timely provide notice and Proof of Loss. As noted in the Order denying summary judgment: "Plaintiff contends that its lawyer was in constant communication with Hartford's lawyer and adjuster regarding the status of the submission of the Proof of Loss, and both counsel had agreed to hold the formal submission of the Proof of Loss 'in abeyance' while documents were gathered and reviewed, and Examinations under Oath were conducted." (Doc. No. 228 at 5). To the extent Plaintiff has maintained that the delay in filing the Proof of Loss was due to excusable circumstances, Defendants are entitled to rebut that showing with evidence of what it contends were the real reasons for the delay.[8]

The Court notes, however, that the plan is not relevant to *why* Plaintiff allegedly never made any effort to repair the structure, or why it asserted and continues to assert that the building cannot be repaired and must be demolished. This is a breach of contract claim. If the terms of the contract apply, they apply regardless of Plaintiff's reasons or motivations. As the Court cannot find that the evidence is irrelevant for all purposes, a more particularized ruling must await proper objection at trial.

---

[8] Further, while there is certainly some harm to Plaintiff in allowing evidence of the plan, the prejudice is not undue. The plan was apparently submitted to the city and Plaintiff pursued it publically, to some point. Any prejudice will no doubt be met by evidence offered from Plaintiff that the plan was a mere proposal of Plaintiff's "vision" (Doc. No. 251 at p. 3).

-13-

| | |
|---|---|
| **MOTION:** | **MOTION TO EXCLUDE INTRODUCTION OF A WRITTEN OPINION BY THE INTERNATIONAL CODE COUNCIL (Doc. No. 252)** |
| **FILED:** | **June 5, 2009** |

**THEREON** it is **ORDERED** that the motion is **GRANTED**.

Subsequent to formulation of his opinions and the taking of his deposition, Defendants' expert witness (Vince Vaulman) apparently wrote to a member of the International Code Council seeking an "official interpretation" of the 2003 International Existing Building Code with respect to "a hotel that was damaged by hurricanes in 2004." (Doc. No. 252-2). Many months later, Vaulman received a letter from the "manager of standards" giving a one sentence "advisory" opinion, and noting that the "final decision is the responsibility of the designated authority charged with the administration and enforcement of this code." (Doc. No. 252-3).

Plaintiff argues the letter is excludable as conduit testimony and because the manager of standards purports to provide expert testimony without meeting the standards for qualifying as an expert witness. Defendants counter that the information was disclosed as a supplementation to the existing report, and is merely being offered as "additional documentation confirming Vaulman's already disclosed expert opinion. . . " (Doc. No. 267).

Defendants are not entitled to bolster their expert in this fashion. Obviously, Vaulman did not rely on this outside opinion as a basis for his analysis. This third party' advice is simply an improperly supported and inadequately disclosed expert opinion that does not qualify for admission. The motion is **GRANTED.** The letter is excluded.

> **MOTION:** MOTION TO PRECLUDE JURY VIEW (Doc. No. 253)
>
> **FILED:** June 5, 2009
> _____
>
> **THEREON** it is **ORDERED** that the motion is **DENIED** as moot.

The parties have resolved this issue by stipulation (Doc. No. 264).

**DONE** and **ORDERED** in Orlando, Florida on July 6, 2009.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record